1  **FARUQI & FARUQI, LLP**
   Vahn Alexander (167373)
2  1901 Avenue of the Stars, Second Floor
   Los Angeles, CA 90067
3  Tel: (310) 461-1426
   Fax: (310) 461-1427
4  Email: valexander@faruqilaw.com

5  *Attorneys for Plaintiff*

6

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11

   STEPHEN ALBERTI, Individually and On
12 Behalf of All Others Similarly Situated,

13                          Plaintiff,          CLASS ACTION

                                                **COMPLAINT FOR BREACH OF**
14        vs.                                   **FIDUCIARY DUTIES**

15 SYBASE, INC., JOHN S. CHEN, CECILIA          **JURY TRIAL DEMANDED**
   CLAUDIO, MICHAEL A. DANIELS, L.
16 WILLIAM KRAUSE, ALAN B.
   SALISBURY, JACK E. SUM, ROBERT P.
17 WAYMAN, SAP AG, SAP AMERICA, INC.,
   and SHEFFIELD ACQUISITION CORP.,
18
                            Defendants.
19

20

21

22

23

24

25

26

27

28

                       CLASS ACTION COMPLAINT

1        Plaintiff Stephen Alberti ("Plaintiff"), on behalf of himself and all others similarly situated,

2   by his attorneys, alleges the following upon information and belief, except as to those allegations

3   pertaining to Plaintiff which are alleged upon personal knowledge:

4                               **NATURE OF THE ACTION**

5        1.     This is a shareholder class action on behalf of the holders of common stock of

6   Sybase, Inc. ("Sybase" or the "Company") against certain officers and/or directors of Sybase, and

7   other persons and entities (collectively "Defendants"). Plaintiff seeks injunctive relief herein, *inter*

8   *alia*, to enjoin the consummation of a proposed transaction, announced on May 12, 2010, whereby

9   SAP AG and SAP America, Inc. will acquire each share of Sybase's outstanding common stock for

10   a price of $65.00 cash per share. The transaction is valued at approximately $5.8 billion (the

11   "Merger"). Alternatively, in the event the Merger is consummated, Plaintiff seeks to recover

12   damages caused by the breach of fiduciary duties owed by the Individual Defendants (as defined

13   herein) to the Company's stockholders.

14        2.     As described below, both the value to Sybase shareholders contemplated in the

15   Merger and the process by which Defendants propose to consummate the Merger are

16   fundamentally unfair to Plaintiff and the other public shareholders of the Company. Defendants'

17   conduct constitutes a breach of Defendants' fiduciary duties owed to Sybase's public shareholders

18   and a violation of applicable legal standards governing Defendants' conduct.

19        3.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin

20   Defendants from consummating the Merger or, in the event the Merger is consummated, recover

21   damages resulting from Defendants' violations of their fiduciary duties of loyalty, good faith, due

22   care and full and fair disclosure.

23                           **JURISDICTION AND VENUE**

24        4.     This Court has jurisdiction over the subject matter of this action pursuant to 28

25   U.S.C. §1332. The matter in controversy, exclusive of interest and costs, exceeds the amount

26   specified by 28 U.S.C. §1332 and the Class Action Fairness Act of 1995, Pub. L. 109-2, and

27   Plaintiff is a citizen of a state different from those of Defendants.

28        5.     Venue is proper in this District under 28 U.S.C. §1391(a) and (c). Defendant

1 | Sybase, and the Individual Defendants, conduct substantial business activity in this District. The

2 | acts, practices and transactions pleaded herein occurred and were affected to a major extent within

3 | this District, and defendant Sybase and the Individual Defendants are citizens of, residents of, are

4 | found within, have agents within, are doing business within and/or transact their affairs in this

5 | District.

6 | ### PARTIES

7 |      6.     Plaintiff Stephen Alberti, a resident of New York is, and was, at all times relevant

8 | hereto, a shareholder of Sybase.

9 |      7.     Defendant Sybase is a corporation organized and existing under the laws of the

10 | State of Delaware, with a business address of One Sybase Drive, Dublin, California 94568. Sybase

11 | markets enterprise software and services to manage, analyze and mobilize information. The

12 | Company provides open, cross-platform solutions that deliver information anytime, anywhere,

13 | providing decision-ready information to the right people at the right time. Sybase delivers a range

14 | of solutions to ensure that customer information is securely managed and mobilized to the point of

15 | action, including enterprise and mobile databases, middleware, synchronization, encryption and

16 | device management software, and mobile messaging services. The Company operates through

17 | three segments: Infrastructure Platform Group ("IPG"), iAnywhere Solutions ("iAS") and Sybase

18 | 365 ("Sybase 365"). The Company's stock is listed on the New York Stock Exchange ("NYSE")

19 | under the symbol "SY."

20 |      8.     Defendant John S. Chen ("Chen") has served as the Company's Chairman, Chief

21 | Executive Officer ("CEO"), and President since November 1998. Chen has served as a director of

22 | the Company since 1997.

23 |      9.     Defendant Cecilia Claudio ("Claudio") has served as a director of the Company

24 | since 1999. Claudio is a resident of California.

25 |      10.     Defendant Michael A. Daniels ("Daniels") has served as a director of the Company

26 | since 2007. Daniels is a resident of Virginia.

27 |      11.     Defendant L. William Krause ("Krause") has served as a director of the Company

28 | since 1995. Krause is a resident of California.

1      12.    Defendant Alan B. Salisbury ("Salisbury") has served as a director of the Company
2   since 1993. Salisbury is a resident of Virginia.

3      13.    Defendant Jack E. Sum ("Sum") has served as a director of the Company since
4   2004. Sum is a resident of California

5      14.    Defendant Robert P. Wayman ("Wayman") has served as a director of the Company
6   since 1995. Wayman is a resident of California.

7      15.    Defendants Chen, Claudio, Daniels, Krause, Sum, Salisbury and Wayman are
8   collectively referred to hereinafter as the "Individual Defendants."

9      16.    Defendant SAP AG is organized under the laws of Germany.  SAP AG's principal
10  executive offices have an address of Dietmar-Hopp-Allee 16, 69190 Walldorf, Federal Republic of
11  Germany.

12      17.    Defendant SAP America, Inc. ("SAP America") organized and existing under the
13  laws of the State of Delaware, with a business address of 3999 West Chester Pike, Newtown
14  Square PA 19073. SAP America is a subsidiary of Defendant SAP AG.

15      18.    Sheffield Acquisition Corp. ("Sheffield") is a Delaware corporation and wholly
16  owned subsidiary of SAP America.

17      19.    Defendants SAP AG, SAP America, and Sheffield are sometimes collectively
18  referred to hereinafter as "SAP."

19              **THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

20      20.    By reason of the Individual Defendants' positions with the Company as officers
21  and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other public
22  shareholders of Sybase and owe Plaintiff and the other members of the Class a duty of highest
23  good faith, fair dealing, loyalty and full and candid disclosure.

24      21.    By virtue of their positions as directors and/or officers of Sybase, the Individual
25  Defendants, at all relevant times, had the power to control and influence, and did control, influence
26  and cause Sybase to engage in the practices complained of herein.

27      22.    Each of the Individual Defendants is required to act in good faith, in the best
28  interests of the Company's shareholders and with such care, including reasonable inquiry, as would

be expected of an ordinarily prudent person. In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision. To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)     discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

(d)     will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders.

23.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Merger, violated duties owed to Plaintiff and the other public shareholders of Sybase, including their duties of loyalty, good faith and independence.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the *Federal Rules of Civil Procedure*, on behalf of all holders of Sybase stock who are being and will be harmed by Defendants' actions described herein (the "Class"). The Class specifically excludes Defendants, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

25.     This action is properly maintainable as a class action.

26.     The Class is so numerous that joinder of all members is impracticable. As of April 30, 2010, there were 86,860,852 shares of Sybase common stock outstanding. Members of the Class are scattered throughout the United States and are so numerous that it is impracticable to bring them all before this Court.

27.     Questions of law and fact exist that are common to the Class, including, among

1   others:

2       (a)    whether the Individual Defendants have fulfilled, and are capable of

3   fulfilling, their fiduciary duties owed to Plaintiff and the Class;

4       (b)    whether the Individual Defendants have engaged, and continue to engage, in

5   a scheme to benefit themselves at the expense of Sybase shareholders in violation of their fiduciary

6   duties;

7       (c)    whether the Individual Defendants are acting in furtherance of their own self

8   interest to the detriment of the Class;

9       (d)    whether Defendants have disclosed, and will disclose, all material facts in

10  connection with the Merger; and

11      (e)    whether Plaintiff and the other members of the Class will be irreparably

12  damaged if Defendants are not enjoined from continuing the conduct described herein.

13      28.    Plaintiff is committed to prosecuting this action and has retained competent counsel

14  experienced in litigation of this nature. Accordingly, Plaintiff is an adequate representative of the

15  Class and will fairly and adequately protect the interests of the Class.

16      29.    Plaintiff's claims are typical of the claims of the other members of the Class and

17  Plaintiff has the same interests as the other members of the Class.

18      30.    The prosecution of separate actions by individual members of the Class would

19  create the risk of inconsistent or varying adjudications with respect to individual members of the

20  Class, which would establish incompatible standards of conduct for Defendants, or adjudications

21  with respect to individual members of the Class which would, as a practical matter, be dispositive

22  of the interests of the other members not parties to the adjudications or substantially impair or

23  impede their ability to protect their interests.

24                              **FACTUAL ALLEGATIONS**

25      31.    Sybase is one of the ten largest independent software companies in the world. The

26  Company's main area of emphasis is in developing relational database management systems for

27  network computer environments. Approximately half of Sybase's revenues come from the sale of

28  its products, with the remaining from other services such as consulting and technical support.

1    32.    Founded in the mid-1980s in Silicon Valley, the Company has grown steadily,
2  establishing a strong market share and a worldwide network of customers.

3    33.    The Company initially focused on marketing cutting-edge relational database
4  management system ("RDBMS"), which would organize information and make it available to
5  many computers in a network. In May of 1987, the Company released the SYBASE system, the
6  first high-performance RDBMS for online applications. Rather than having a vast central bank of
7  data stored in a large mainframe computer, the SYBASE System distinguished itself from
8  competitors by providing for a client/server computer architecture which logically broke up
9  monolithic applications into separate components that interrelated over a network for faster
10  processing. The system linked hardware and software into a complex web in which information
11  resources were distributed over multiple computer systems. This allowed clients (individual
12  desktop computers) and servers (databases) to move information and tools back and forth between
13  themselves in order to most efficiently fulfill a company's needs. With the SYBASE system,
14  companies could maintain the integrity of and control over information that a mainframe gave
15  them, but could also make use of that information in a much more widespread and efficient
16  manner.

17    34.    Since its founding, the Company has also forged several noteworthy and important
18  alliances. For example, in September of 1987, Pyramid Technology Corporation agreed to sell its
19  own hardware and Sybase software as a package deal. Moreover, in January 1988, Microsoft made
20  an agreement with Sybase in 1986 that would allow Microsoft to license the Company's
21  technology.

22    35.    Besides partnering with established companies, the Company also made
23  complementary acquisitions. In January of 1990, Sybase acquired D&N Systems, Inc., an
24  integrated database consulting firm in January for $3.5 million. This strategic acquisition allowed
25  Sybase to increase its penetration of the government market, including NASA, the Army, and the
26  Air Force's Military Airlift Command. These clients made particular use of the Sybase program's
27  capacity to keep data secure and confidential.

28    36.    These partnerships also allowed Sybase to establish a strong following in the

1    corporate and government world. Due to its influence, Sybase targeted its sales in part to

2    customers who required online transaction processing - or real-time computer operations - such as

3    banks.

4        37.    Sybase's strong growth has also been driven by the Company's rapid international

5    expansion. After its successful revamp of foreign operations, overseas sales had doubled in 1993,

6    boosted by 82% growth in Europe and an extremely strong 182% gain in Asia and Latin America.

7    These operations accounted for more than a quarter of the Company's revenues. By the end of

8    1993, Sybase's revenue had reached $427 million, and earnings were $44 million. The Company's

9    growth rate was 61%, which made Sybase the world's second largest supplier of enterprise

10   client/server RDBMS software.

11       38.    Currently, the Company's business is organized into three principal operating

12   segments, Infrastructure Platform Group, iAnywhere Solutions and Sybase 365.

13       39.    The Company's total revenues have grown each and every year since 2005.

14       40.    As noted in the Company's 2009 Annual Report to Shareholders filed with the SEC

15   on February 26, 2010 (the "Annual Report") the Company's total revenues in 2009 were over

16   $1.17 billion.

17       41.    As explained to shareholders in the Annual Report, the Company has "made

18   substantial investments in software research and product development." During 2009, the

19   Company's investment in research and product development generated expenses of $138.1 million.

20       42.    On January 28, 2010, Sybase reported Unaudited Consolidated Earnings Results for

21   the Fourth Quarter and Full Year Ended December 31, 2009. According to the press release

22   announcing these results, Sybase delivered the "best quarter in Company history, resulting in the

23   third consecutive year of record revenue, earnings, and cash flow. For the quarter, the Company's

24   total revenue grew 9% to $331.7 million compared with $305.1 million in the fourth quarter of

25   2008. Operating income increased 41% year over year to $98.6 million, representing an operating

26   margin of 30% compared to $69.8 million for the same quarter a year ago. GAAP net income grew

27   34% year over year to $59.8 million. GAAP earnings per diluted share (EPS) grew 22% year over

28   year to $0.66. This compared with 2008 fourth quarter GAAP net income of $44.6 million and

1    GAAP EPS of $0.54. Cash flow from operations increased 34% year over year to $113.5 million

2    in the quarter. Income before income taxes was $85.7 million compared to $60.1 million for the

3    same quarter a year ago. For the full year, total revenue increased 3% year over year to $1.17

4    billion compared to $1.13 billion for the previous year.

5        43.    Commenting on these record results, defendant Chen stated:

6            We are very pleased to deliver another record quarter, culminating in a third
             consecutive year of record revenue, earnings and cash flow. 2009 marked a year of
7            major accomplishments for Sybase as we strengthened our leadership position in
             enterprise computing. We secured key mobility partnerships with SAP, Verizon,
8            Samsung and IBM and delivered innovative products in analytics, enterprise
             mobility, and mobile commerce. In the process, we garnered recognition for
9            leadership in our key growth markets.

10           As a result, we enter 2010 well positioned for continued momentum and ongoing
             market share gains as our vision increasingly resonates with our expanding
11           customer and partner ecosystem.

12       44.    On March 11, 2009, SAP and Sybase jointly announced a partnership which would

13   enable certain SAP products, including the SAP Business Suite 7 to fully run on the Apple iPhone,

14   Microsoft Windows Mobile, BlackBerry smartphones and other mobile devices. A key feature of

15   the partnership is the ability to allow users to have access to critical customer data in both

16   connected and disconnected modes right from their mobile device of choice by utilizing Sybase's

17   business process mobilization technology. This partnership also enables sales professionals access

18   to the SAP customer relationship management (CRM) solution. While on the move they will be

19   equipped with up-to-the-minute data on their customers that is synchronized with the enterprise

20   applications, allowing the seamless execution of customer transactions as well as integration with

21   mobile business processes.

22       45.    Commenting on the partnership, defendant Chen stated:

23           We are currently witnessing the proliferation of mobile devices that is transforming
             the way users interact with information and applications on a global basis. Today's
24           wireless consumers are provided with extensive features and functionality
             surrounding interaction, collaboration and information accessibility. To effectively
25           carry this rich experience over to the enterprise, an open, standardized platform
             approach is required for interfacing between multiple application and device assets.
26           Our partnership with SAP combines the world's most widely used business
             applications with a leading mobile middleware platform on the market today,
27           bringing us one step closer to realizing our vision of the Unwired Enterprise.

28

46.   Additionally, Bill McDermott, President, Global Field Operations, and a member of

the SAP executive board stated:

> Our customers demand mobile access to proven business applications to stay connected to their customers, suppliers, partners and employees to drive innovation and productivity. SAP is committed to helping customers adapt to business change and optimize the value derived from our leading solutions and extensive partner ecosystem. Working together with Sybase, we will provide the modern mobile workforce with the tools they need on the device of their choice, which will enable faster time to value, through access to business functionality anytime, anywhere.

47.   Commenting on the partnership, Stephen Drake, Program Vice President, Mobility

and Telecom, IDC, stated:

> Today's announcement represents a significant industry development that addresses built-up demand by an increasing number of businesses looking to take that next step towards enterprise mobility. Although network connectivity speeds and mobile device computing power have improved, there are fundamental IT barriers that remain on the application side preventing enterprise mobility from reaching its full potential. With their respective market leadership positions, SAP and Sybase are uniquely positioned to quickly optimize enterprise systems for mobile devices and deliver high productivity applications.

48.   On April 22, 2010, Sybase once again reported historical first quarter records for

total revenue, operating income, operating margin, net income, EPS, and cash flow from

operations. For the three months ended March 31, 2010, Sybase's revenues increased 10% to $294

million, while net income increased 48% to $39.9 million. GAAP EPS of $0.45 was up 36% year

over year. The Company also raised full-year guidance for earnings and cash flow.

49.   Commenting on the results, defendant Chen stated:

> 2010 is off to a strong start for Sybase. We achieved historical first-quarter highs in revenue, operating margins, earnings, and cash flow. Expansion of data, mobile devices, and real-time computing is driving adoption of our Unwired Enterprise strategy and stimulating demand for our data management, analytics, and mobility offerings. We made progress across our product stack as we launched innovative new solutions in the quarter, including the ASE In-Memory Database option, Operator Analytics 365, Mobile CRM for SAP, and Mobile Workflow for SAP, among others.
>
> Due to our stronger-than-expected Q1 results, we are raising our guidance for full-year earnings and cash flow. For the balance of the year, we remain focused on investments in product innovation, partnerships, and sales channels to capitalize on both mid- and long-term opportunities.

50.   On May 12, 2010, Sybase issued a press release announcing that it had signed a

definitive merger agreement with SAP to be acquired in a deal valued at approximately $5.8

1   billion.

2       51.   · Specifically, the Agreement and Plan of Merger ("Merger Agreement"), entered by

3   and among the Company, SAP America, a Delaware corporation ("Parent"), and Sheffield

4   Acquisition Corp., a wholly-owned subsidiary of Parent ("Purchaser") provides that the Purchaser

5   will commence a cash tender offer to acquire all of the shares of the Company's common stock

6   including the associated preferred share purchase rights issued in connection with a right

7   agreement for a purchase price of $65.00 per share in cash. Upon consummation of the Offer, the

8   Purchaser will be merged with and into the Company, and as a result the Company will continue as

9   the surviving corporation and a wholly owned subsidiary of Parent (the "Merger").

10      52.   Commenting on the Merger, defendant Chen stated:

11  This combination is a transformative event in the software industry.  SAP's in-
    memory technology in combination with Sybase's database technology will
12  revolutionize how transactional and analytic applications are built, benefiting all
    businesses. Further, by combining the market leader in enterprise applications with
13  the market leader in enterprise mobility, companies around the world will be able to
    run their business from many devices. This will drive a new wave of enterprise
14  productivity. The combined SAP/Sybase will be able to provide a software offering
    that enables companies to transform their businesses in an increasingly data-,
15  consumer- and mobile-centric world.

16      53.   Moreover, Vishal Sikka, Chief Technology Officer and a member of the SAP

17  executive board in charge of Technology and Innovation stated:

18  This transaction better positions SAP and Sybase to bring remarkable benefits of
    mobility and real-time information to our customers' existing technology
19  investments.  SAP's in-memory computing technology is already revolutionizing
    business analytics and will bring a paradigm shift to enterprise data management for
20  all applications. The in-memory team within SAP will continue its current mission
    to innovate in-memory technology and these innovations will enable both SAP and
21  Sybase to bring unprecedented value to their customers.

22      54.   The $65.00 cash per share offered in the Merger is unfair and grossly inadequate

23  because, among other things, the intrinsic value of Sybase's common stock is materially in excess

24  of the amount offered for those securities in the proposed acquisition given the Company's

25  prospects for future growth and earnings.

26      55.   *Mobileenterprisemag.com* has called the acquisition of Sybase a "game changer" for

27  SAP. According to the article, the Merger is a "testament to the accelerating demand for mobile

28

1    business applications" that Sybase focuses on:

2         "The growth of mobile devices, such as the iPhone and BlackBerry Bold, has
         perpetuated end-user demand for access to crucial enterprise applications and
3        information on the go," says Sheryl Kingston, Director of Yankee Group's
         Enterprise Research Group in Boston.  SAP has the capacity and innovation to
4        create those desired mobile applications, complete with intelligently embedded
         functionality like unified communications, presence and location-based services and
5        multimedia, but until now they had no way to support them.

6         "Sybase brings to the table a mobile platform that can help SAP transform their
         applications to be consumed anywhere, anytime on any device.  This is crucial for
7        SAP to stay competitive.  Past Yankee Group reports have elaborated on the need
         for enterprise applications to adopt cloud computing, mobility and social media
8        technologies – this deal gives SAP two out of three in one purchase."

9         The deal brings many assets to the combined entity, notes Andrew Borg, Senior
         Research Analyst, Wireless & Mobility, Aberdeen Group.  "Highly visible among
10       them are in-memory computing and a robust mobile platform that together bring the
         'real-time enterprise' one step closer to reality."
11

12        56.     Moreover, according to Paul D. Hamerman, Vice President, Principal Analysts at

13   Forrester Research, Inc.:

14        The deal is a good move by SAP mainly because it accelerates SAP's innovation
         strategy, which is focused on in-memory computing, mobile device applications,
15       analytics, and SaaS. Sybase brings assets to the table in each of these areas:

16        •   In-memory databases via its Adaptive Server Enterprise (ASE) platform
             and SQL Anywhere.
17
         •   Mobile applications development and device management via Sybase
18           Unwired and Afaria.

19        •   Analytics via the Sybase IQ column oriented analytics server and complex
             event processing (CEP) technology.
20
         •   Cloud computing is delivered via Sybase's partnership with Amazon Web
21           Services.

22        It is also a good move for several other reasons:

23        •   It extends SAP's industry play with Sybase's strong presence in financial
             services, as well as increasing its regional presence in AsiaPac.
24
         •   It grows revenue profitably, at a time when SAP has been struggling with
25           sales of its own products.

26        •   It makes a move that will get Oracle's attention.

27        Regarding the latter point, SAP and Oracle regard one another as bitter rivals in
         applications, yet SAP has a significant dependence on Oracle as a key database
28       platform provider, both for customers and for its own internal use. Potentially, the
         Sybase ASE database platform will reduce SAP's own dependence on Oracle and

---
                              CLASS ACTION COMPLAINT                              12

give it an opportunity to offer customers another option. However, Sybase is not currently a supported platform for the SAP Business Suite. SAP says it intends to make Sybase a supported platform as soon as possible.

Overall, the real gem of the acquisition, from an innovation standpoint, appears to be the mobile development environment and device management platform. With Sybase Unwired, the mobile apps can be written once and deployed on multiple mobile platforms, including BlackBerry, Apple, Android, etc. This platform gives SAP the opportunity to develop new types of business applications for mobile devices, extending its footprint well beyond the current apps portfolio.

57. On May 12, 2010, *Businessweek* reported that Sybase will "help SAP better provide in-memory databases and software used in mobile computing and services delivered via the Internet." Citing Ray Wang, an analyst at the Altimeter Group, SAP's acquisition of Sybase is essential to SAP as "Sybase has three of the most innovative technologies required for the next decade."

58. While the Individual Defendants were negotiating the Merger, they arranged for their continued employment with SAP. Specifically, in the press release announcing the Merger, it noted that: "Sybase will operate as a standalone unit under the name 'Sybase, an SAP Company.'" Sybase's management team will continue to run the business. The SAP Executive Board plans to propose to the Supervisory Board to appoint the Chairman and CEO of Sybase to SAP's Executive Board."

59. Under the circumstances, however, the Individual Defendants are obligated to explore all alternatives to maximize shareholder value, and not act to promote their own self-interest.

60. The Merger is unfair because it has several terms that will operate as deterrents to other potential bidders, ensuring that SAP acquires the Company. On May 12, 2010, prior to the execution of the Merger Agreement, the Company entered into an amendment (the " Rights Agreement Amendment ") to the Preferred Stock Rights Agreement between the Company and American Stock Transfer and Trust Company, as rights agent, dated as of July 31, 2002, ("poison pill") amended as of February 14, 2005, in order to, among other things, render the rights therein inapplicable to each of (i) the approval, execution or delivery of the Merger Agreement, including the approval, execution and delivery of any amendments thereto, (ii) the announcement,

1  commencement and consummation of the Offer, (iii) the consummation of the Merger, (iv) the
2  acceptance for payment and purchase or exchange of shares of the Company's common stock
3  pursuant to the Merger Agreement, including without limitation, in connection with the Offer, the
4  Merger or the exercise of a Top-Up Option (discussed below), (v) the announcement of the Merger
5  Agreement or the Merger or (vi) the announcement or consummation of any other transactions
6  contemplated by the Merger Agreement.   The poison pill acts as a deterrent to unwelcome third
7  party bidders.

8      61.   The Company has granted to Parent and Purchaser an irrevocable option (the " Top-
9  Up Option ") under the Merger Agreement to purchase at a per share price equal to the Offer Price,
10  following the consummation of the Offer and subject to certain conditions and limitations, newly
11  issued shares of the Company's common stock, up to the total number of its authorized but
12  unissued shares, equal to the number of shares that, when added to the number of shares of the
13  Company's common stock owned by Parent and Purchaser immediately following the
14  consummation of the Offer, shall equal one share more than 90% of the shares of the Company's
15  common stock outstanding after such purchase (calculated on a fully diluted basis in accordance
16  with the Merger Agreement). The Top-Up Option is intended to expedite the timing of the
17  completion of the Merger by effecting the Merger pursuant to Delaware's "short form" merger
18  statute. Following the Offer and, if necessary, the exercise of the Top-Up Option, if Purchaser
19  does not own at least 90% of the outstanding Shares, a Company stockholder vote is required to
20  consummate the Merger. In such case, the approval of the Merger at a meeting of the Company's
21  stockholders.

22      62.   The poison pill and the Top-Up Option are particularly troubling as the *San Jose
23  Business Journal* recently reported on May 14, 2010, that Hewlett-Packard Co. ("HP"), may
24  emerge as a rival bidder for Sybase, offering as much as 10% more than SAP. Citing analyst Peter
25  Goldmacher ("Goldmacher"), the article notes that "Sybase's core offerings revolve around data,
26  analytics and mobile, three critical holes in HP's current software strategy."   Additionally,
27  Goldmacher noted that: "HP has $12.4 billion (including Palm) in cash on the balance sheet and
28  the deal is $0.03 accretive to earnings at a 10 percent premium to SAP's purchase price of $65. If

1  HP doesn't buy Sybase, it loses its last chance to be a relevant standalone competitor in data
2  management and risks falling further behind enterprise data management titans Oracle and IBM."

3      63.   Additionally, certain defendants and executives of Sybase stand to benefit from the
4  Merger in the form of "change-of-control" severance benefits. According to the April 12, 2010,
5  Definitive Proxy Statement, defendant Chen would be entitled to change in control severance
6  payments equal to two times his then current annual base salary and annual target incentive
7  compensation and accelerated vesting of 100% of his then-outstanding stock options and stock
8  appreciation rights and the immediate release of all of his restricted stock from escrow. Thus, had
9  a change of control occurred as of December 31, 2009, Chen would have been eligible to receive
10  $30,142,798.00. According to *footnoted.com*, the change-of-control severance benefits at the
11  Merger's current valuation are closer to $42 million as the "bulk of Chen's compensation is in
12  stock."

13      64.   The Company also has agreements that provide for benefits payable upon a change
14  of control, with: Jeffrey Ross, the Company's Chief Financial Officer; Steve Capelli, President of
15  Worldwide Field Operations; Dr. Raj Nathan, Executive Vice President and Chief Marketing
16  Officer of Worldwide Marketing and Business Solutions Operations; and Marty Beard, the former
17  Senior Vice President, Corporate Development and Marketing, who currently serves as the
18  President of Sybase 365, a subsidiary of the Company. According to the Definitive Proxy, had a
19  change of control occurred as of December 31, 2009, these executives would have been eligible to
20  receive $3,676,053, $8,210,352, $4,401,012, and $5,771,954 respectively.

21                                                 **FIRST CAUSE OF ACTION**

22           **(Claim for Breach of Fiduciary Duties Against the Individual Defendants)**

23      65.   Plaintiff repeats and realleges each allegation set forth herein.

24      66.   The Individual Defendants have violated fiduciary duties of care, loyalty, candor
25  and good faith owed to the public shareholders of Sybase.

26      67.   By the acts, transactions and courses of conduct alleged herein, the Individual
27  Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive
28·

1    Plaintiff and other members of the Class of the true value of their investment in Sybase.

2        68.    As demonstrated by the allegations above, the Individual Defendants failed to
3    exercise the care required, and breached their duties of loyalty, good faith, candor and
4    independence owed to the shareholders of Sybase because, among other reasons, they failed to take
5    steps to maximize the value of Sybase to its public shareholders, by, among other things, failing to
6    adequately consider potential acquirers.

7        69.    By reason of the foregoing acts, practices and course of conduct, the Individual
8    Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary
9    obligations toward Plaintiff and the other members of the Class.

10       70.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will
11   suffer irreparable injury in that they have not and will not receive their fair portion of the value of
12   Sybase's assets and businesses and have been and will be prevented from obtaining a fair price for
13   their common stock.

14       71.    The Individual Defendants are not acting in good faith toward Plaintiff and the
15   other members of the Class, and have breached and are breaching their fiduciary duties to the
16   members of the Class. Unless the Individual Defendants are enjoined by the Court, they will
17   continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, and may
18   consummate the Merger which will deprive the Class of its fair proportionate share of Sybase's
19   valuable assets and businesses, to the irreparable harm of the members of the Class.

20       72.    Plaintiff and the members of the Class have no adequate remedy at law. Only
21   through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected
22   from the immediate and irreparable injury which the Individual Defendants' actions threaten to
23   inflict.

24                              **SECOND CAUSE OF ACTION**

25       **(Claim for Aiding and Abetting Breaches of Fiduciary Duties Against Sybase and SAP)**

26       73.    Plaintiff incorporates by reference and realleges each and every allegation contained
27   above, as though fully set forth herein.

28

74.    SAP has acted and is acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Sybase's public shareholders, and has participated in such breaches of fiduciary duties.

75.    SAP has knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.   In so doing, SAP rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Merger in breach of their fiduciary duties.

76.    Such breaches of fiduciary duties could not and would not have occurred but for the conduct of defendant SAP, who therefore aided and abetted such breaches in the sale of Sybase to SAP.

77.    Defendant Sybase, by reason of its status as a party to the Merger and its possession of non-public information, has aided and abetted the Individual Defendants in the aforesaid breach of their fiduciary duties.

78.    Sybase has knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.   In so doing, Sybase rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Merger in breach of their fiduciary duties.

79.    Such breaches of fiduciary duties could not and would not have occurred but for the conduct of defendant Sybase, who therefore aided and abetted such breaches in the sale of Sybase to SAP.

80.    As a result of the unlawful actions of defendants SAP and Sybase, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive fair value for Sybase's assets and businesses. Unless the actions of defendants SAP and Sybase are enjoined by the Court, defendants SAP and Sybase will continue to aid and abet the Individual Defendants' breaches of their fiduciary duties owed to Plaintiff and the members of the Class.

81.    Plaintiff has no adequate remedy at law.

///

///

1

## PRAYER FOR RELIEF

2     WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against
3  Defendants as follows:

4     A.    Declaring that this action is properly maintainable as a Class action and certifying
5  Plaintiff as Class representative;

6     B.    Enjoining Defendants, their agents, counsel, employees and all persons acting in
7  concert with them from consummating the Merger, unless and until the Company adopts and
8  implements a procedure or process to obtain a merger agreement providing the best possible terms
9  for shareholders;

10    C.    Rescinding, to the extent already implemented, the Merger or any of the terms
11  thereof, or granting Plaintiff and the Class rescissionary damages;

12    D.    Directing the Individual Defendants to account to Plaintiff and the Class for all
13  damages suffered as a result of the Individual Defendants wrongdoing;

14    E.    Awarding Plaintiff the costs and disbursements of this action, including reasonable
15  attorneys' and experts' fees; and

16    F.    Granting such other and further equitable relief as this Court may deem just and
17  proper.

18

## JURY TRIAL DEMANDED

19     Plaintiff hereby demands a trial by jury on all claims set forth herein.

20  ///

21  ///

22  ///

23

24

25

26

27

28

CLASS ACTION COMPLAINT                                                    18

1  DATED: May 17, 2010                    **FARUQI & FARUQI, LLP**

2

3                                         By: _____
                                              Vahn Alexander (167373)
4
                                          1901 Avenue of the Stars, Second Floor
5                                         Los Angeles, CA 90067
                                          Tel: (310) 461-1426
6                                         Fax: (310) 461-1427
                                          Email: valexander@faruqilaw.com
7
                                          **FARUQI & FARUQI, LLP**
8                                         David Leventhal
                                          369 Lexington Avenue, Tenth Floor
9                                         New York, NY 10017
                                          Tel: (212) 983-9330
10                                        Fax: (212) 983-9331

11                                        **GARDY & NOTIS, LLP**
                                          Mark Gardy
12                                        560 Sylvan Avenue
                                          Englewood Cliffs, NJ 07632
13                                        Tel: (201) 567-7377
                                          Fax: (201) 567-7337
14
                                          *Attorneys for Plaintiff*
15

16

17

18

19

20

21

22

23

24

25

26

27

28